[No. 49535-1. En Banc. September 15, 1983.]

*In the Matter of the Marriage of* KYOKO SMITH, *Respondent, and* ELMER CHARLES SMITH, *Appellant.*

*F. Curtis Hilton,* for appellant.

*Burtch & Blauvelt* and *Arthur A. Blauvelt III,* for respondent.

DORE, J.—This appeal, certified to this court by the Court of Appeals pursuant to RCW 2.06.030(d), involves the proper disposition of a 1980 trial court order modifying a decree of dissolution to divide a military pension which had not been awarded to either spouse in the original decree. In light of the Uniformed Services Former Spouses' Protection Act (Act), 10 U.S.C.A. § 1408 (West Supp. 1983), we affirm the trial court's award of military pension payments.

## I

Elmer and Kyoko Smith were married on November 19, 1957 in Tokyo, Japan, where Elmer was stationed in military service. During the two decades of their marriage, they resided in several foreign countries and many states. At the time Mr. Smith's military retired pension vested as a result of his 20 years of military service, the Smiths were residents of the state of Washington, living at Fort Lewis. On April 7, 1976, Mr. Smith executed a community property agreement, making all property owned by himself property of the community. Although the notary's attestation indicates Mrs. Smith signed the document, her signature does not appear on the original filed with the court.

On October 21, 1976, Mrs. Smith filed a petition for dissolution, using a form apparently obtained from a "do–it–yourself" divorce kit. The military retired pension the parties were receiving was not mentioned in the petition, nor in the final documents granting the decree of dissolution. A decree of dissolution was entered on January 28, 1977. Under its terms, Mrs. Smith was awarded a 1969 automobile, some household furnishings, her personal effects and belongings, and spousal maintenance of $100 per month for

6 months. Mr. Smith was awarded a 1975 automobile, the family home, and his personal effects and belongings. Both parties agree there was no mention or consideration of the military retired pension in the decree of dissolution issued by the court.

In July 1979, Mrs. Smith filed a petition for modification of the decree of dissolution, asking to be awarded a percentage of Mr. Smith's military retired pension payments. Smith responded, asking the court to set aside a deed by which he deeded the family home awarded to him in the decree of dissolution to Mrs. Smith. Testimony at trial established that on January 24, 1979 Mr. Smith quitclaimed his interest in the family home to Mrs. Smith. This deed was executed in proper form and properly recorded, and was found by the court below to be valid. Mr. Smith testified that although there was no agreement between him and his ex–wife at the time he deeded the home to her, he took that action to "cause her to stop any action towards trying to secure one–half of my retirement pay". Mrs. Smith assumed the underlying mortgage on the home.

The trial court found the Smiths had been married approximately 72 percent of the time the military pension was being earned. On April 18, 1980, the court below awarded Mrs. Smith 36 percent of the military retired pension payments. The court also found that the quitclaim deed of the home was valid. Mr. Smith appeals these findings.

## II

The issue of primary importance in this appeal is the effect of the Uniformed Services Former Spouses' Protection Act. *McCarty v. McCarty,* 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). In *McCarty,* the United States Supreme Court held that federal law prohibits a state court from dividing military nondisability retired pay pursuant to state community property laws. The *McCarty* Court reviewed a California court's holding that military retired pay was quasi–community property and each spouse had an absolute right to a one–half interest in it. The Supreme

Court reversed an order which required the husband to pay one–half of his monthly military pension to his ex–spouse. Basing its conclusion upon the language, structure and legislative history of the federal statutes, the Court held that federal law precludes courts in community property states from *dividing* military retired pay. Acknowledging that the plight of a retired service member's ex–spouse may be mitigated by the ability to garnish the retired pay for purposes of support, the *McCarty* Court then stated at pages 235–36:

> Nonetheless, Congress may well decide, as it has in the Civil Service and Foreign Service contexts, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone. We very recently have re–emphasized that in no area has the Court accorded Congress greater deference than in the conduct and control of military affairs. Thus, the conclusion that we reached in *Hisquierdo [v. Hisquierdo,* 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979)] follows *a fortiori* here: Congress has weighed the matter, and "[i]t is not the province of state courts to strike a balance different from the one Congress has struck." 439 U. S., at 590.

(Citation omitted.)

In *In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982), we held that *McCarty* dictated that military nondisability retired income was not community property subject to division in a dissolution action. Prior to *Dessauer,* the court recognized that a military pension was community property to the extent that community funds or community labor have been invested and, as such, could be divided. *See Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975). In *Dessauer,* however, this court held that a trial court may consider the fact that one spouse is receiving or will receive income due to military retired pay in ascertaining the economic circumstances of the parties. We stated at page 838:

> There is nothing in *McCarty* directing us to hold otherwise. Without considering the true economic circumstances of the parties before it, the court would be unable to properly exercise its discretion and make a just and

equitable distribution of the property as required by statute.

RCW 26.09.080(4) requires courts to look at all property, community and/or separate, and consider all relevant factors, including "[t]he economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children." After doing this, all that is required is that the court make a disposition "as shall appear just and equitable". This court has declined to apply *McCarty* retroactively. *In re Marriage of Brown*, 98 Wn.2d 46, 653 P.2d 602 (1982); *In re Marriage of Smith*, 98 Wn.2d 772, 657 P.2d 1383 (1983).

In response to the *McCarty* case, Congress in 1982 passed the Uniformed Services Former Spouses' Protection Act. This Act permits a court to award up to 50 percent of the disposable retired or retainer pay to the nonmilitary spouse, provided the couple was married for at least 10 years during qualified service. As the Smiths' marriage meets this qualification, the Act's effect on this appeal must be determined.

■ The trial court's characterization of the military retired pay as community property was impermissible under our ruling in *Dessauer*. Section 1408(c)(1) of the new Act, however, provides:

> Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

A remand of this case because the military pay was mischaracterized would be pointless, as the above quoted section permits the trial court to repeat its previous characterization.

The trial court's division of property as a whole was certainly not an abuse of its discretion. Mrs. Smith will receive

approximately $500 a month from Mr. Smith's military retired pay, plus $150 a month child support payments. Out of this amount, she must make $275-a-month mortgage payments, and support their 15-year-old son. Mr. Smith retains approximately $800 a month of his military retired pay. Considering Mrs. Smith's lack of education and her difficulty in obtaining employment, we cannot say the court reached an inequitable result.

## III

■ We next address the trial court's affirmance of the conveyance of the family home from Mr. Smith to his ex-wife. The trial court concluded there was no fraud; there was consideration in the form of the assumption of the underlying mortgage, and there was no agreement or waiver by the respondent of her rights in the military retired pension in exchange for the deed. The trial court's determination of these factual issues is supported by substantial evidence, and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

### CONCLUSION

We now hold that the Uniformed Services Former Spouses' Protection Act effectively nullified the United States Supreme Court's holding in *McCarty v. McCarty, supra*. As we are no longer bound by the *McCarty* decision, we now hold, in accordance with section 1408(c)(1) of the new Act, a court may award up to 50 percent of the disposable retired or retainer pay to the nonmilitary spouse, provided all requirements of the Act are met. We now abandon our holding in *In re Marriage of Dessauer, supra*, that military nondisability retired income is not community property subject to division in a dissolution action.

We affirm the trial court's judgment and order of April 18, 1980.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.