Kenneth M. ZANDER, Plaintiff and Appellant,

v.

Bernadette ZANDER, Defendant and Appellee.

Civ. No. 900121.

Supreme Court of North Dakota.

June 3, 1991.

Wefald Law Office, Ltd., Bismarck, for plaintiff and appellant, argued by Robert O. Wefald.

Feldner & Danielson, Mandan, for defendant and appellee, argued by Rodney A. Danielson.

GIERKE, Justice.

Kenneth Zander appeals from (1) a district court judgment; and (2) an order denying his motion for new trial, relief from judgment and for a stay pending appeal. We affirm in part and reverse in part and remand.

Kenneth and Bernadette Zander were married in 1972. The couple separated in May of 1988 and their children, Christi and Jennifer, continued to reside with Bernadette. The Burleigh County Juvenile Court subsequently found Christi and Jennifer to be deprived and transferred legal custody to Burleigh County Social Services.

Kenneth filed for divorce in March of 1989. The District Court's judgment awarded custody of Jennifer to Kenneth and custody of Christi to Bernadette, with each party having reasonable visitation rights. Kenneth was allocated the dependency exemptions for both children. Kenneth was ordered to pay $500 per month in child support for Christi. Bernadette was not required to contribute to Jennifer's support. The court awarded Bernadette $12,000 of the $18,500 that Kenneth had contributed to his pension plan as part of an equitable distribution of the marital property and specified that $4,000 of that award be deemed spousal support. In addition, Bernadette was awarded 10% of Kenneth's pension entitlement when he begins to draw it. Kenneth was also ordered to pay Bernadette $100 per month as additional spousal support for 24 months.

Kenneth asserts on appeal that the district court erred in ordering him to pay $500 monthly child support for Christi. The trial court found that Bernadette was destitute and did not have the ability to contribute to Jennifer's support. Further, the trial court stated in its "Memorandum Of Opinion" that: "[Kenneth] is employed by BNI Coal and earns $17.55 per hour. His net take home pay averages $2,200. per month.... [Bernadette] is unemployed". Relying on child support guidelines that we have since determined to be invalid, *see Illies v. Illies*, 462 N.W.2d 878 (N.D.1990), the trial court awarded $500 per month based on Kenneth's net income of approximately $2,200 per month. The then applicable guidelines did not contain a formula for allocating support when custody is split.

Kenneth argues that the former guideline amount for non-custodial children be evenly split for divided custody. Therefore, arguing that since the child support payment for two children is $660, he should only be required to pay $330, because he has custody of Jennifer. The new guidelines published as rules at Chapter 75–02–04.1, N.D.A.C., has an explicit, presumptive formula for allocating support when custody is split. Section 75–02–04.1–03, N.D.

A.C., provides: "A support amount must be determined for the child or children in each parent's sole custody. The lesser amount is then subtracted from the greater. The difference is the child support amount owed by the parent with the greater obligation." This allocation method is more reasonable than the method urged by Kenneth on appeal. However, given the facts in this case, the child support for Christi would not appreciably change under the new guidelines since Bernadette is destitute and unable to provide support for Jennifer.

■ A proper reading of our opinion in *Illies* is that we will not automatically reverse decisions in which the child support guidelines were applied by the trial court. *See Puklich v. Puklich,* 463 N.W.2d 651 (N.D.1990).

Under Section 14–09–09.7(3), N.D.C.C., there is a rebuttable presumption that the amount of child support resulting from an application of the guidelines would be correct. Although that amount is only presumptively correct, that presumption applied at the time the trial court, believing the guidelines were applicable, made the award. The presumption was not rebutted at trial, therefore, a remand for consideration under the new guidelines would constitute a matter of form not substance. *Wenzel v. Wenzel,* 469 N.W.2d 156 (N.D.1991).

■ We believe the trial court's use of the child support guidelines amounted to harmless error, pursuant to Rule 61, N.D. R.Civ.P. Because we believe that the newly promulgated guidelines which became effective February 1, 1991, *see* Chapter 75–02–04.1, N.D.A.C., would apply were we to remand for further consideration of child support, we have examined the guidelines and conclude that the amount awarded by the trial court in this instance, $500, is within the guidelines. *Wenzel, supra* at 158.

We affirm the $500 monthly child support for Christi.

■ The next issue raised by Kenneth concerns whether or not the district court's distribution of Kenneth's retirement pension was clearly erroneous. A trial court's determination on matters of property division is treated as a finding of fact and will not be set aside unless "clearly erroneous". *Heggen v. Heggen,* 452 N.W.2d 96 (N.D. 1990).

■ The record reflects that the only appreciable asset of this marriage is Kenneth's pension fund which was valued at $84,200 at the time of the trial. By statute, the district court is required to make an "equitable" distribution of the real and personal property of the parties. Section 14–05–24 N.D.C.C. The determination of what constitutes an equitable distribution lies within the discretion of the district court and is dependent upon the facts and circumstances of each case. *Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D.1979).

Kenneth offered two proposals for dividing the pension fund. Kenneth's contributions to the fund totalled $18,500 at the time of the divorce. Half of that would be $9,275. As a compromise, and in lieu of Bernadette's right to future retirement benefits, Kenneth suggested awarding her more than half of the pension fund. He suggested $12,000. He suggested as an alternative proposal that the court award Bernadette 10% of his pension benefit when he retired. Bernadette proposed that she receive one-half of the value paid when Kenneth draws retirement based on the 144 months of employment during their marriage. As stated above, Kenneth intended his proposals to be in the alternative. The trial court was not required to accept one or the other, but should explain its reasons for using both alternatives.

■ Retirement benefits may be divided at the time of the divorce by either awarding the present value of the benefits or, when there are insufficient assets for a present division or when present evaluation is unacceptably speculative, by awarding future payments according to a fixed percentage. *Lentz v. Lentz,* 353 N.W.2d 742 (N.D.1984).

■ In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the

employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts before it. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn. 1983). Division of retirement benefits at the time of divorce is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony on valuation is not speculative. The second method of division requires the determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan, payable when paid to the employee. This method should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably split the retirement benefits at the time of the divorce. *Taylor v. Taylor, supra.* Either method is appropriate, depending upon the circumstances of the case, the status of the parties and whether the result is a reasonable valuation of the marital asset. *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981).

▪ The trial court's findings do not appear to support awarding Bernadette a present cash payment from the pension plan and also a percentage of Kenneth's pension at the time of his retirement. The trial court found a present value for the retirement benefits but divided the pension assets according to both present value and future payment methods of apportionment without explanation. If the trial court believed that Bernadette was entitled to benefit from Kenneth's employer's share paid into the pension fund, it made no specific finding to that effect. More importantly, the trial court did not determine what effect, if any, the withdrawal of $12,000 from the fund would have on Kenneth's retirement benefit. From the findings made by the trial court, we are unable to determine whether or not the distribution is equitable. On remand, we instruct the trial court to redetermine the equitable distribution of pension assets and make findings of fact to support the distribution.

▪ Kenneth moved for a new trial based on newly discovered evidence stating that after the divorce trial he learned that Bernadette failed to disclose a $20,000 Certificate of Deposit (C.D.) she had received from her parents which should have been included in the marital estate. Bernadette and her mother responded by affidavit indicating that the money was not within Bernadette's control at any time and that the money was intended for Christi's and Jennifer's college educations. The trial court ruled that Kenneth failed to establish a basis for a new trial based on newly-discovered evidence, finding that there was no showing that the evidence proffered would produce a different result. We see no abuse of discretion in this ruling.

Accordingly, we affirm the child support award, we reverse and remand the pension distribution for reconsideration and we affirm the order denying the motion for new trial.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

MESCHKE, Justice, concurring and dissenting.

I respectfully dissent from reversing the pension distribution, although I concur in the rest of the decision.

The majority criticizes the trial court's failure to "determine what effect, if any, the withdrawal of $12,000 from the fund would have on Kenneth's retirement benefit." The majority also complains that there are no specific findings "that Bernadette was entitled to benefit from Kenneth's employer's share paid into the pension fund." The majority opinion then directs the trial court "to redetermine the equitable distribution of pension assets and make findings of fact to support the distribution" because "we are unable to determine whether or not the distribution is equitable." I cannot agree.

Furthermore, I would not reach this issue. Kenneth did not address this subject in his motion for new trial, or in his supporting brief on that motion. Under *Andrews v. O'Hearn*, 387 N.W.2d 716, 728–29

(N.D.1986), questions not raised in a motion for new trial are waived. Undoubtedly, that is the reason that the trial court did not address this issue in denying Kenneth's motion for new trial.

The trial court carefully appraised the spouses' marital assets:

> The parties own no real estate, have the usual househould [sic] furnishings and have no bonds, stocks, or other valuable assets. [Kenneth] does have a pension plan with his employer which had a value in October, 1989 of $84,200. [Kenneth] has contributed $18,500. to this amount. [Kenneth] does not have access to his employers contribution at this time. Apparently his contribution can be utilized to make a payment to his spouse (or former spouse) if a "qualified domestic relations" order is entered.

> \*   \*   \*   \*   \*   \*

> The personal property of the parties has been divided. Said property has an agreed value of $2,914. This figure does not include a 1977 Blazer in [Kenneth's] possession and a 1986 Cavalier [Bernadette] has. The Blazer has a value of $1,500., the Cavalier a v[a]lue of $5,000. There is a current indebtedness against the Cavalier of $6,200 [that Bernadette is] . . . to assume the payments therefor after she receives the $12,000. . . .

The value of the pension plan had been earned entirely during the marriage since Kenneth began working for BNI in 1977.

Kenneth gave the trial court information about the pension plan through a summary letter from his employer:

> You are fully vested in your pension plan. The value of your pension account as of November 1, 1989 is estimated to be $84,200 represented by $18,550 of employee contributions with accumulated interest and $65,650 of employer contributions with accumulated interest. These funds are only available to you as a retirement benefit commencing no sooner than the first day of the month following your 55th birthday. The employee contributions, however, may be available to you as a lump-sum distribution when you

terminate employment at any age for any reason.

> In addition, federal law requires your plan to comply with "Domestic relations orders" which result from an order or decree issued by a court that obligates you to pay child support or alimony, or otherwise allocates a portion of your assets in the plan to your spouse, former spouse, child or other dependent. If a qualified domestic relations order is received, all or a portion of your benefits may be used to satisfy the obligation.

Any failure in proof about the pension plan is Kenneth's deficiency, not Bernadette's.

No adverse effect on the pension beyond the exact decrease in vested value by withdrawal of the $12,000 was suggested in this appellate argument. Since the pension is fully vested, the entire value was clearly marital property even if only part could be withdrawn presently for a "qualified domestic relations" purpose. *See* 60A Am. Jur.2d *Pensions and Retirement Funds* §§ 291, 294 (1988). Since the entire value is fully vested, I do not understand why Bernadette should not be entitled to share in Kenneth's employer's contributions.

Kenneth argues that the "only part of the pension that is truly part of the marital estate is KEN's contributions plus the interest they accumulated, which totaled $18,550." I do not understand this argument. The $84,200 is "fully vested," even though a large part cannot be withdrawn until retirement, just as in other vested pension funds that are restricted until retirement. *See Olson v. Olson,* 445 N.W.2d 1, 13 (N.D.1989). While pensions are exempt from "all attachment or process," they "are not exempt from enforcement of any order to pay spousal support or child support, or a qualified domestic relations order. . . ." NDCC 28–22–03.1(3). *See also* Employee Retirement Income Security Act, § 206(d)(3), 29 U.S.C.A. § 1056(d)(3); Internal Revenue Code, 26 U.S.C.A. § 414(p)(1); and 60A Am.Jur.2d *Pensions and Retirement Funds* §§ 463–467 (1988). The entire value fully vested is part of the marital estate.

Without evidence, Kenneth suggests that the "present value" of the pension account is only $18,550, since that is the "only part of that pension plan that could be touched by the order of the court." The majority opinion seems to follow this notion. However, the present value is clearly the fully vested amount of $84,200, absent some showing by Kenneth that a disproportionate forfeiture or effect would result from a withdrawal by a qualified domestic relations order. The trial court properly considered the entire, fully vested value.

The trial court explained its division of this "only appreciable asset in the marriage":

> [Kenneth] shall pay to [Bernadette] the sum of $12,000. from his share of his pension plan as part of an equitable settlement of the marital property interest and partly to provide a portion of the rehabilitative spousal support [Bernadette] is entitled to. $4,000. of the $12,000 shall be deemed partial spousal support. The $12,000. is to be paid 30 days after entry of the decree unless an extension is granted for good cause shown. In addition, [Bernadette] is awarded 10 percent of [Kenneth's] pension entitlement at the time he starts to withdraw it. If [Kenneth] withdraws it in lump sum, [Bernadette] will receive 10 percent thereof. If [Kenneth] takes his retirement pay on a monthly, quarterly or other installment basis, [Bernadette] is to receive ten percent thereof.

The $4,000 distributed as spousal support is only 5% of the fully vested value and is obviously taken out of Kenneth's share of marital property. The $8,000 distributed as property to Bernadette is another 10%. Together with the 10% apportioned to Bernadette upon later withdrawal at Kenneth's retirement, this leaves 75% of the value, currently and fully vested, for the ultimate benefit of Kenneth. This is far short of an equal division.

Kenneth proposed to the trial court that Bernadette be awarded either a $12,000 cash withdrawal or 10% of benefits at retirement. Kenneth now argues that the trial court could not do both. Why is not explained. Without a showing that both together would be inequitable in amount, or over 50% of net marital assets, I do not understand why the trial court is powerless to do so. The majority recognizes that either method, a present award or a presently defined apportionment at withdrawal upon retirement, may be appropriate, but hesitates about approving both together, even when each is a modest proportion. Since a division of up to $42,000 presently, as 50% of the presently vested amount, would be surely equitable if possible, it is difficult to comprehend why $8,000, or 10% now, together with a later 10% apportionment becomes inequitable.

While a property division need not be equal to be equitable, any substantial inequality must be explainable. *Volk v. Volk*, 404 N.W.2d 495 (N.D.1987). Since this property distribution does not treat Bernadette anywhere near equally, I do not understand Kenneth's appeal or the majority opinion's disposition.

Under the *Bullock* formula for presently apportioning a vested, but presently inaccessible, pension upon retirement, Bernadette would normally expect at least a percentage upon Kenneth's retirement equivalent to that here disbursed. *See Bullock v. Bullock*, 354 N.W.2d 904, 908–09 (N.D. 1984). The *Bullock* formula uses the number of years of the marriage during which the pension was earned, divided by the number of total years in earning the pension, times one-half of the later retirement payout to calculate a divorced spouse's apportionment. *Id.* Here, if Kenneth retired when he first could at age 55, that formula would compute as 12 years of retirement earnings during this marriage (although they have been married for over 19 years), divided by the 26 retirement earning years, multiplied times one-half, for a net apportionment to Bernadette upon withdrawal of 23 percent [12 divided by 26 times 50% = 23%]. The trial court's combined 20% for property division, now and later, substantially parallels the *Bullock* formula, and is not inequitable.

In sum, I see no need for the redetermination of the distribution of pension assets

that the majority directs. There is nothing inequitable about this distribution, considering Bernadette's circumstances and the fully vested value of $84,200 as the "only appreciable asset in the marriage."

Because I would affirm in all respects, I respectfully dissent.

LEVINE, J., concurs.