733 So.2d 364 (1999)
Shonna Upchurch McGEHEE, Appellant,
v.
Anthony UPCHURCH, Appellee.
No. 97-CA-01499 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*365 James G. McIntyre, Jackson, Attorney for Appellant.
Arnold F. Gwin, Greenwood, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, and SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Shonna Upchurch McGehee appeals the judgment of the Carroll County Chancery Court denying her motion for modification of former judgment of divorce which granted primary physical custody of the minor child to the natural father, Anthony Upchurch, granting the counterclaim of Anthony for child support payments, and establishing structured visitation rights of Shonna. Finding Shonna's assignments of error to be without merit, we affirm.

*366 FACTS
¶ 2. Anthony Upchurch was granted a divorce from Shonna Upchurch McGehee on the ground of adultery by decree of the Carroll County Chancery Court on February 22, 1996. Upon agreement of the parties, both were granted joint legal custody of their minor child, Hillary Lauren, and Anthony was granted primary physical custody, subject to visitation rights granted to Shonna. Shonna's visitation rights were described in the final judgment of divorce as "liberal reasonable visitation with Hillary, subject to the following restriction: So long as Shonna Upchurch is unmarried to Gary McGehee, Shonna Upchurch shall keep Hillary out of the presence of Gary McGehee at all times when she is exercising her visitation rights with Hillary." Shonna and Gary McGehee were married on March 15, 1996.
¶ 3. Since the rendition of the divorce decree until September 1996, Anthony allowed Shonna to exercise her visitation rights liberally (approximately fourteen days a month). In September 1996 when Hillary began kindergarten, Anthony restricted Shonna's visitation rights to alternating weekends beginning at 11:30 a.m. when Hillary is dismissed from kindergarten until Monday at 8:00 a.m. when Shonna takes Hillary to kindergarten.
¶ 4. On September 23, 1996, Shonna filed a motion to modify former judgment of divorce seeking a change in the primary physical custody of the minor child. In his answer to motion to modify judgment of divorce and counterclaim, Anthony requested that Shonna be ordered to pay reasonable child support and attorney fees in defending the modification action.
¶ 5. The matter was tried on January 27 and 28, 1997. At the conclusion of the trial, the chancellor found Shonna had failed to prove that a material change in circumstances had occurred within the custodial home which adversely affected the best interest of the minor child. Therefore, the chancellor denied Shonna's motion to modify the primary physical custody provisions of the divorce decree.
¶ 6. On March 4, 1997, Shonna filed a motion for a new trial, or in the alternative, for the court to amend its findings or make additional findings alleging that the opinion rendered from the bench on January 28, 1997, and written opinion rendered on February 6, 1997, were contrary to the overwhelming weight of credible evidence and not supported by the law or the evidence.
¶ 7. The chancellor entered judgment on April 11, 1997, denying the motion for modification of the original judgment of divorce and granting Anthony's counterclaim for child support and ordering Shonna to pay child support to Anthony for the minor child in the amount of $90 per month commencing on March 15, 1997 and continuing on the fifteenth of each month thereafter until the child is emancipated, self sustaining, or by order of the court. The court denied Anthony's request for attorney fees. Further, the chancellor set forth structured visitation arrangements of the non-custodial parent: Shonna would have visitation rights with the minor child commencing every other weekend starting the first week of March 1997 from Thursday after school when Shonna will pick up the child from school until the following Monday morning when Shonna will return the child to school and Anthony will pick the child up from school; and Shonna will have the child on alternate weeks (i.e., during those weeks when she does not have visitation with the child beginning on Thursday) from Wednesday after school, and she will return the child to school the following Thursday morning and like visitation to continue until further order of the court.
¶ 8. The motion for new trial or for additional findings of facts was denied on October 21, 1997.
Aggrieved, Shonna perfected this appeal alleging:
*367 I. THE LOWER COURT ERRED BY FAILING TO EXCLUDE ANY AND ALL TESTIMONY REGARDING ISSUES PRIOR TO THE COURT'S FINAL DIVORCE DECREE.
II. THE LOWER COURT ERRED BY HOLDING THAT NO MATERIAL CHANGE IN CIRCUMSTANCES ADVERSE TO THE CHILD OCCURRED SINCE THE ENTRY OF THE FINAL DIVORCE DECREE.
III. THE LOWER COURT ERRED BY GRANTING THE APPELLEE AN AWARD OF CHILD SUPPORT WHEN NO SUBSTANTIAL EVIDENCE WARRANTED SUCH A MODIFICATION.

ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE LOWER COURT ERRED BY ADMITTING TESTIMONY PERTAINING TO ISSUES RESOLVED IN FINAL DIVORCE DECREE.
¶ 9. The supreme court has repeatedly held that in order to justify the modification of a divorce decree, the petitioner must show a material change in circumstances arising after the original decree was entered. See, e.g., Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997); Morris v. Morris, 541 So.2d 1040, 1042-43 (Miss.1989). Shonna contends the lower court erroneously allowed testimony to be presented during the modification hearing regarding issues predating the final divorce decree. Anthony argues that the lower court sustained Shonna's objections to any evidence offered by Anthony pertaining to Shonna's activities prior to the divorce with one exception.
¶ 10. The record reveals the chancellor sustained Shonna's objection each time Anthony raised the issue of pre-divorce activities. However, the chancellor did allow Anthony to make a proffer of what his evidence would have been. The chancellor's ruling and Anthony's proffer were well within the procedural rules allowing such proffers in question and answer form. Buchanan v. Buchanan, 587 So.2d 892 (Miss.1991). See M.R.E.103(b).
¶ 11. After Shonna's counsel questioned Anthony during cross-examination about Shonna's conduct and ability as a mother before February 22, 1996, Anthony moved the court to admit the excluded proffer concerning Shonna's pre-divorce conduct, but the chancellor again refused.
¶ 12. The only instance in which the chancellor allowed Anthony to go behind the final judgment of divorce over Shonna's objection was during his cross-examination of Shonna's expert witness, Dr. Angelia O'Briant Herzog, a clinical psychiatrist. On direct examination, Dr. Herzog was questioned regarding the history of marital discord given by Shonna and Dr. Herzog's reliance on that history in her evaluation and diagnosis of the minor child.
¶ 13. Thereafter, the chancellor overruled Shonna's objection to the cross-examination on the history taken stating:
It appears to the Court that [Dr. Herzog's] evaluation and histories that she took involved information that was before this Divorce Decree, and that was incorporated in her diagnosis and prognosis; therefore, it is competent to go into it.
¶ 14. The chancellor also allowed into evidence the deposition of Shonna previously given in the divorce proceeding for the limited purpose of ascertaining the history Dr. Herzog obtained therefrom.
¶ 15. The standard by which this Court reviews a trial judge's decision to admit evidence was stated in Stewart v. Stewart, 645 So.2d 1319, 1320 (Miss.1994) (quoting Century 21 Deep South Properties v. Corson, 612 So.2d 359, 369 (Miss.1992)):
The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. Unless the trial judge's discretion *368 is so abused as to be prejudicial to a party, this Court will not reverse his ruling.
¶ 16. Relevant evidence is any evidence having a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Although relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. M.R.E. 403. Given the contours of Rules 401 and 403, this Court finds that there was no abuse of discretion.
¶ 17. We first address the relevancy of the cross-examination. The final judgment of divorce reflected the agreement of Anthony and Shonna as to child custody:
The parties, both personally and by their attorneys, dictated into the record their agreement as to alimony, child custody, and property settlement, all as more fully ordered hereinafter, and the court, finding that said agreement is fair and is in the best interest of the minor child of the parties, does hereby approve said agreement and adopt it as the judgment of this court. It is, therefore, hereby ordered and adjudged as follows, to-wit:
2. The parties are hereby granted joint legal custody of the minor child of the parties, Hillary Upchurch, but sole physical custody of Hillary Upchurch is granted to Anthony Upchurch....
¶ 18. Dr. Herzog testified on direct that less than one month after the final judgment of divorce was entered, Shonna hired Dr. Herzog to evaluate Hillary to determine whether Hillary was suffering adversely from the impact of separation from Shonna. Dr. Herzog testified that she relied upon Shonna to give her the history of Hillary and the circumstances about which Shonna was concerned. The testimony elicited on cross-examination established that Dr. Herzog also relied upon the deposition Shonna gave during the divorce proceeding. Certainly, Anthony was entitled to cross examine Dr. Herzog regarding the basis for her evaluation of the minor child, which was relevant to the issue before the lower courtthe motion to modify the primary physical custody of Hillary. The deposition of Shonna given during the proceedings of the divorce action was admitted into evidence for the limited purpose of determining the basis of Dr. Herzog's evaluation.
¶ 19. We next consider whether the relevant evidence should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. We find the danger of unfair prejudice as minimal given that the chancellor was the fact-finder and would limit the use of Shonna's deposition to the purpose enunciated. Further, the final judgment of divorce recited that "the Court having heard in open court the evidence of Anthony Upchurch as to his wife's adultery, and the Plaintiff, Shonna Upchurch, both appearing in person and by attorney, having failed to offer any evidence in support of her sworn complaint, finds that Anthony Upchurch is entitled to a divorce from Shonna Upchurch on the grounds of adultery." Thus, the ground upon which the divorce was granted was accessible by the fact-finder in the instant proceeding. Also, the chancellor in the instant proceeding for modification of the judgment of divorce also served as the presiding judge over the underlying divorce action.
¶ 20. We find the chancellor did not abuse his discretion in allowing testimony regarding the history obtained by Dr. Herzog for the purpose of evaluating the minor child or in admitting the deposition of Shonna given during the divorce proceeding for the limited purpose of ascertaining the history that Dr. Herzog obtained therefrom. There is no merit to this assignment of error.

II. WHETHER THE LOWER COURT ERRED IN HOLDING THAT THERE HAD BEEN NO SUBSTANTIAL *369 AND MATERIAL CHANGE OF CIRCUMSTANCES WITHIN THE CUSTODIAL HOME ADVERSE TO THE CHILD SINCE THE ENTRY OF THE FINAL DIVORCE JUDGMENT.
¶ 21. In order to justify the modification of a custody decree, the non-custodial parent must prove by a preponderance of the evidence that since the entry of the decree, a material change in circumstances has occurred within the custodial home which adversely affects the child's welfare. Riley v. Doerner, 677 So.2d 740, 743 (Miss. 1996). Once such an adverse change has been shown, the moving party must show that a change in custody is in the best interest of the child. Id. The chancellor is afforded broad discretion in the modification of child custody, and we will not reverse unless his "finding is manifestly wrong, or is not supported by substantial credible evidence." Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996).
¶ 22. The record supports the chancellor's finding that there has not been a change in circumstances within the custodial home warranting modification of the custody order.
¶ 23. On point with the case sub judice is O'Neal v. Warden, 345 So.2d 610 (Miss. 1977), in which the mother willingly relinquished physical custody of two minor children to the father. Five and a half years later the mother petitioned to modify the decree, alleging that she had remarried, was reformed, and was now suitable and fit to have their custody. The Mississippi Supreme Court refused to change custody of the children and stated:
This Court has repeatedly held that when a decree has been entered and has become final which awards custody of a child to one parent that it cannot be materially modified or altered unless subsequent thereto there has been a material change of circumstances and then only after a finding based on substantial evidence that such change of circumstances materially affects the children's welfare adversely.
Id. at 612.
¶ 24. The O'Neal case was later cited with approval by the supreme court in Bowden v. Fayard, 355 So.2d 662 (Miss. 1978). In reversing and remanding the lower court's modification of the final decree, the supreme court recognized:
It is important that children have as much stability as possible when their parents are divorced. Once the court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is. A material change of circumstances of the party not having custody of the children is not in and of itself enough to warrant a change of custody. There must be a showing that a change of circumstances has occurred which materially affects the children's welfare adversely.
Id. at 664.
¶ 25. Looking at events since the entry of the final judgment of divorce on February 22, 1996, which incorporated the parties' agreement that Anthony would have primary physical custody of Hillary, the record shows material and substantial changes have occurred in the circumstances of the non-custodial parent. Shonna married Gary McGehee on March 15, 1996, and gave birth to their son on November 23, 1996. She now owns her own home. Shonna attends church with Hillary when Hillary is in Shonna's custody. Shonna continues to work full-time at an annual salary of $15,000. However, as stated in Bowden v. Fayard, a material change of circumstances of the party not having custody of the child is not enough to warrant a change of custody. Id. Shonna must also show that a material change of circumstances has occurred within the custodial home which materially affects the child's welfare adversely. This she failed to do.
*370 ¶ 26. The record fails to show any change in the circumstances of Anthony, the custodial parent, since the divorce decree. Anthony and Hillary live with Anthony's parents while Anthony's home is being renovated. According to Shonna, at the time of the divorce the home was in the process of being renovated. Anthony continues to be a fifty percent owner of Upchurch Telecommunications. Hillary attends kindergarten until 11:30 a.m. each weekday. Her paternal grandmother supervises Hillary until Anthony returns from work which is usually 4:30 to 5:30 p.m. About once a month, Anthony is required to work until 8:30 p.m.
¶ 27. Shonna presented witnesses who testified that Anthony had socialized at several establishments since the divorce. In rebuttal, Anthony presented witnesses who testified he dated and socialized only on the weekends when Shonna had custody of Hillary. Further, his sister-in-law described Anthony as a "learning father," who maintained primary responsibility for Hillary's needs despite the fact Anthony and Hillary live with the paternal grandparents.
¶ 28. To determine whether Hillary was affected adversely by her separation from Shonna, Shonna employed Dr. Herzog less than a month after the final judgment of divorce was entered. At the hearing on the modification of the divorce decree, Dr. Herzog testified that based on her evaluation of Hillary during ten sessions Hillary was suffering from depression and it would be in Hillary's best interest for Shonna to have primary physical custody. Dr. Herzog acknowledged she had not interviewed Anthony, any paternal relative of Hillary or her kindergarten teacher while gathering the history of the minor child.
¶ 29. Testifying for Anthony, Judy Bankston, the director of the Presbyterian church kindergarten Hillary attends, stated Hillary was a well behaved, happy, cooperative five-year-old child.
¶ 30. The record shows Shonna exercised her visitation rights with Hillary an average of fourteen days a month before Anthony restricted her visitation to alternate weekends when Hillary began kindergarten in September 1996.
¶ 31. We find therefore that there is substantial evidence in the record to support the chancellor's finding that there was no material change in circumstances within the custodial home adversely affecting the minor child's best interests. Accordingly, we affirm the chancellor's denial of Shonna's motion to modify the divorce decree to change the primary physical custody of the minor child.

III. WHETHER THE LOWER COURT ERRED BY AWARDING CHILD SUPPORT TO THE CUSTODIAL PARENT.
¶ 32. Shonna mischaracterizes the award of child support in the chancellor's April 11, 1997 order as a modification. The final judgment of divorce did not address the issue of child support. Thus, Shonna's third assignment of error challenges the child support award given to Anthony as custodial parent of the minor child.
¶ 33. The awarding of child support to the custodial parent is within discretion of the chancellor pursuant to Miss.Code Ann. § 93-11-65 (Supp.1998):
[W]here the proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children in proportion to the relative financial ability of each.
Our supreme court consistently has held that it will not disturb a chancellor's determination of child support "unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." Grogan v. Grogan, 641 So.2d 734, 741 (Miss.1994).
¶ 34. The Mississippi Supreme Court delineated several factors in Dufour v. Dufour, 631 So.2d 192, 194 (Miss.1994), a chancellor is to consider before awarding child support to a custodial parent: (1) the *371 health of the custodial parent and his earning capacity; (2) the health of the non-custodial parent and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the custodial parent; (5) the reasonable needs of the child; (6) the necessary living expenses of the non-custodial parent; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the custodial parent has the free use of the home, furnishings and automobile, and (9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
¶ 35. The record supports the chancellor's finding that both parents have separate incomes. Shonna testified that she earned $15,000 annually. Anthony's annual salary was approximately $40,000. The financial statement and disclosure required under U.C.C.R. 8.05 enabled the chancellor to determine the necessary living expenses for each. Both parties are young and healthy. The record shows that the chancellor was well within his discretion in ordering the non-custodial parent to pay child support to the custodial parent, even if it is a woman paying to her ex-husband. Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997). Therefore, the court did not err in awarding child support to Anthony.
¶ 36. Although neither party raised the issue as to the amount of child support awarded to the custodial parent, we note that the chancellor failed to make a clear and concise finding of fact as to why he deviated from the statutory guidelines as required under Miss.Code Ann. § 43-19-101(2) (Supp.1998).
¶ 37. The amount of child support to be awarded in Mississippi is controlled by statute with some discretion left to the chancellor. See Miss.Code Ann. § 43-19-101 (Supp.1998). As a general rule, a non-custodial parent is required to give fourteen percent of her adjusted gross income for the support of one child. See Miss. Code Ann. § 43-19-101(1) (Supp.1998). Section 43-19-101(2) requires a "written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate ... as determined under the criteria specified in § 43-19-103" in order to effectively overcome the statutory presumption. Similarly, § 43-19-101(4) reads in part, "the court shall make a written finding in the record as to whether or not the application of the guidelines established" is reasonable. Our supreme court has held that these provisions, operating in conjunction, at a minimum require some written reference to the guidelines being bypassed and some explanation as to why. Knutson v. Knutson, 704 So.2d 1331, 1334 (Miss.1997). When a chancellor makes a ruling without specific findings of fact and a party raises the issue of the amount of child support awarded, this Court will send the issue back to the lower court for the mandatory specific findings of fact as to why the chancellor deviated from the guidelines.
¶ 38. In the case sub judice, Anthony did not object to the amount awarded as child support even though it was less than he would be entitled to under the statutory guideline of fourteen percent of the non-custodial parent's adjusted gross income. Shonna objected to the chancellor's award of child support in any amount.
¶ 39. "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." Cupit v. Cupit, 559 So.2d 1035, 1036-37 (Miss.1990). The chancellor found in his February 6, 1997 opinion, which was incorporated into his April 11, 1997 order, that Shonna "should be required to pay child support in the amount of 10% of her adjusted gross income (one half of the statutory amount) as determined by Section 43-19-101 MCA by applying the statutory guideline of 20% for the support of two children per month" and awarded Anthony $90 per month in child support. Although his finding was *372 incorrect as to the number of children born of the marriage of Anthony and Shonna, the chancellor could have been considering the fact that another child had been born to Shonna and she would be contributing to the support of that child in addition to Hillary. Shonna testified her net monthly income was $800. Applying the statutory formula for one child (fourteen percent of the adjusted gross income of the non-custodial parent), we find that the chancellor's award of child support in the amount of $90 a month was less than the statutory guideline or approximately eleven percent of Shonna's net monthly income.
¶ 40. The chancellor did not make a written finding in the record as to why he determined that the statutory guideline would not be followed but it is clear he used the statutory percentage as a baseline before adjusting it to fit the circumstances of the parties. Johnson v. Johnson, 650 So.2d 1281 (Miss.1994). The disparity in the income of Anthony and Shonna and the age of the minor child, who was five years old at the time of the hearing, supports the chancellor awarding child support in an amount less than the statutory guideline of fourteen percent of Shonna's adjusted gross income. Further, Shonna testified she is willing to pay Hillary's monthly tuition to attend the Presbyterian kindergarten which at the time of the hearing was $70.
¶ 41. Since the chancellor's child support award to Anthony was supported by the evidence and Anthony did not raise the issue that the child support awarded was less than the statutory scheme, and finding no abuse of discretion, other manifest error, or the erroneous application of law, we affirm the child support award in this case.

CONCLUSION
¶ 42. As to all points of error, we conclude that the chancellor committed no error and therefore affirm his decision.
¶ 43. THE JUDGMENT OF THE CARROLL COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, LEE, PAYNE, and SOUTHWICK, JJ., CONCUR.