ROBERTS, J.,
for the Court:
¶ 1. After over twenty-five years of marriage, Henry Stout and Tracey Stout agreed to an irreconcilable-differences divorce. They submitted several issues for the chancellor to decide, such as child support, property division, and alimony. Displeased with the chancellor’s decision on the issues, Henry filed the present appeal. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Henry and Tracey were married on October 28, 1983. They had three children: Timothy, born August 9, 1985; Rachel, born November 5,1988; and Kendall, born June 25, 1993. Henry and Tracey separated on April 18, 2009. At the time *180 of separation, Timothy was over twenty-one years old, Rachel was twenty years old, and Kendall was fifteen years old. On July 1, 2009, Tracey filed a complaint for divorce, a motion for temporary relief, and a motion for a temporary restraining order. A week later, Henry filed his answer to Tracey’s complaint and a counterclaim for divorce. Both claimed fault-based grounds for divorce.[1] The chancellor entered an agreed temporary order on July 20, 2009. Henry was ordered to pay 20% of his adjusted gross income (AGI) as child support for Rachel and Kendall, for a total of $1,303 per month. Henry was also ordered to pay Tracey spousal support in the amount of $1,000 every two weeks and also to pay any joint marital debts. Tracey was given temporary, exclusive use and possession of the marital home and the responsibility to pay the mortgage.
¶ 3. Then, on January 7, 2011, Henry filed a motion to modify the temporary order and a motion for citation of contempt. Some of the requests in his motion included: a reduction in his child support due to the emancipation of Rachel, reimbursement/credit for the times he continued paying child support for Rachel after the date she was emancipated, and removal of the spousal-support obligations. Tracey filed a motion for contempt and other relief on April 13, 2011. On April 18, 2011, the chancellor held a hearing on the motion. According to the bench ruling, recited into the record by Henry’s attorney, the chancellor ordered Tracey to attend Alcoholics Anonymous meetings twice a week, enjoined her from drinking alcohol to excess, and reduced child support owed by Henry to 14% without applying the statutory cap.
¶ 4. Henry and Tracey ultimately dropped their fault-based complaints for divorce and agreed to an irreconcilable-differences divorce, but they submitted the following issues for the chancellor to decide: the classification of property as marital, separate, or commingled; the demarcation date that the property and debt was no longer considered marital; the equitable distribution of marital and commingled property; the date of emancipation of the two minor children and any credits/reimbursements of support associated with them; the entitlement of either party to credit/reimbursement for overpayment of spousal support, child support, or other payments made to the other spouse; a determination of any owed spousal support, child support, or other payments due under the previous temporary order and bench ruling; the appropriateness of alimony; and the appropriateness of attorney’s fees.
¶ 5. Following a multi-day trial in March 2012, the chancellor granted the irreconcilable-differences divorce and ruled on the issues presented. The parties stipulated that all children of the marriage were emancipated. In regard to child-support issues, the chancellor found that Henry’s child-support obligations ended February 2012 when Kendall became emancipated. He was denied credit or reimbursement for any payments he made before his child-support obligation was modified from 20% to 14% of his AGI as a result of Rachel’s emancipation. The chancellor denied a credit or reimbursement because she determined that Rachel and Kendall continued living with Tracey even after Rachel reached the age of majority. Further, Henry had exercised hardly any visitation with the children since Henry and *181 Tracey separated in 2009. Tracey’s monthly income was much smaller in comparison to Henry’s. Also, the temporary order did not specify that the child-support obligation would be reduced when Rachel reached the age of majority. Next, the chancellor denied Henry’s request that he receive a credit on the 14% of his AGI he paid for the remaining child, Kendall, because he paid $861 monthly instead of $583 monthly. The chancellor found Henry in arrears on that issue because 14% of his monthly AGI should have been $1,057.19 from May-December 2011 and $1,028.40 from January-February 2012. All of these •amounts were above the $861 he actually paid.
¶ 6. After classifying property as separate or marital, the chancellor divided the marital property. She determined the following property to be marital: the marital home; all vehicles purchased prior to the temporary order; 92.5% of Henry’s military retirement benefits; the Federal Employees Retirement System retirement account in Henry’s name valued in 2009; the Public Employees’ Retirement System retirement account in Tracey’s name valued in 2009; Henry’s Thrift Savings Plan valued in 2009; the checking and savings accounts of the parties as of 2009; Henry’s life insurance policy; insurance refunds from USAA Insurance and Wells Fargo; and all other personal property. The chancellor awarded Tracey assets worth $80,952.48, consisting of the marital home, including its $60,000 mortgage; 50% of Henry’s Thrift Savings Plan; Tracey’s PERS retirement account; and her vehicle, also including the debt on the vehicle. Tracey also received 64.75% of Henry’s total monthly retirement benefits. Henry received $50,938.48, including two vehicles and four motorcycles, and 50% of his Thrift Savings Plan. Henry received 35.25% of his total monthly retirement benefits. The remainder of the personal property was split equally at a value of $5,260 to each party. Henry also had to pay half of the credit card bills owed at the time of the temporary order and the full amount of two loans he obtained. Tracey was ordered to pay Henry $200 as half of the cost of the appraisal of the marital home.
¶ 7. The chancellor then considered the issue of alimony, and after applying the Armstrong factors, determined that Tracey was entitled to $1,226 in permanent alimony. Henry was also found in contempt of the temporary order in the amount of $16,446.83. This sum came from past-due child support, the failure to pay Rachel’s car loan, and the failure to pay for half of the children’s college expenses. The chancellor also ordered Henry to pay $8,000 in Tracey’s attorney’s fees after finding him in contempt of the July 20, 2009 temporary order.
¶ 8. Aggrieved by the chancellor’s findings and decision, Henry appeals and raises six issues:
I. The chancellor abused her discretion, committed manifest error, and applied an erroneous legal standard in denying Henry credit for the child support he paid on behalf of Rachel after she became emancipated in November 2009.
II. The chancellor abused her discretion, committed manifest error and applied an erroneous legal standard when after the trial, she set the monthly amount of child support for Kendall retroactively back to May 1, 2011[,] above 14% of $50,000 annual income contrary to the child support statute and putting Henry in contempt and arrears.
III. The chancellor’s finding that Kelly Carr and Henry’s relationship was *182 the ultimate demise of the marriage is not supported by the evidence.
IV. The chancellor’s division of the marital estate was not equitable and should be reversed, specifically: the chancellor’s determination of the value of marital home was improperly based on 2012 values as opposed to the 2009 value of the temporary order; the chancellor’s award to Tracey of 70% of the marital portion of Henry’s military retirement and FERS retirement; the chancellor’s findings of values were incorrect and not supported by the evidence resulting in [a] benefit to Tracey.
V. The chancellor applied an erroneous legal standard in determining that a disparity existed in the parties’ estates sufficient to award Tracey alimony.
VI. The chancellor abused her discretion and committed manifest error in awarding Tracey $8,000 in attorney’s fees.
STANDARD OF REVIEW
¶ 9. “A chancellor’s determinations in an irreconcilable[-]differences divorce will not be disturbed as long as the findings are ‘supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or an erroneous legal standard was applied.’” McNeese v. McNeese, 119 So.3d 264, 268 (IT 8) (Miss.2013) (quoting Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002)).
ANALYSIS
I. CHILD SUPPORT
¶ 10. Although raised in several issues, this section will address all child-support issues. First, Henry contends that the chancellor erred in not awarding him a credit or reimbursement for the months he paid child support, 20% of his AGI, for both Rachel and Kendall, even though Rachel was emancipated. The Mississippi Supreme Court has defined emancipation as the “freeing of a child for . all period of its minority from its care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent’s legal obligation to support it.” Strack v. Sticklin, 959 So.2d 1, 6 (¶ 19) (Miss.Ct. App.2006) (quoting Burt v. Burt, 841 So.2d 108, 111 (¶ 9) (Miss.2001)). “Occurrence of any one of the statutory events does not automatically mandate emancipation; the statute’s language is permissive and is left to the chancellor’s discretion.” Id.; see also Caldwell v. Caldwell, 823 So.2d 1216, 1221 (¶¶ 18-19) (Miss.Ct.App.2002) (“[A] father does not get an automatic reduction in child support when one child reaches maturity.... [A] chancellor should have the discretion to grant an obligor parent a credit for child support payments which were made on behalf of a child subsequent to that child’s emancipation.”). Additionally in Strack, this Court found that if David Strack “desired to be relieved of his obligation to pay child support, due to the alleged emancipation of the children, it was his responsibility to bring the matter to the attention of the chancellor.” Id. at (¶ 20) (citing Wiles v. Williams, 845 So.2d 709, 711-12 (¶ 12) (Miss.Ct.App.2003)). In the present case, Henry continued paying 20% of his AGI pursuant to the temporary order for a period of eighteen months after Rachel was emancipated. Just as in Strack, Henry had the responsibility to bring this change to the chancellor’s attention and seek a modification of his support obligations. Additionally, case law is clear that it is in the chancellor’s discretion to *183 award a credit for overpayment of child support. In this case, the chancellor clearly explained her reasons for not awarding Henry a credit. Some reasons given were that although Rachel had reached the age of majority, she was still living with Tracey and having Tracey pay for a large portion of her needs. Henry did not exercise visitation with his daughters. Also considered was the fact that the temporary order did not specifically state that child support would be modified or terminated upon the emancipation of one of the children.
¶ 11. It is within the chancellor’s discretion to award a credit, and we do not see that the chancellor abused her discretion. This issue is without merit.
¶ 12. Henry’s next issue is that the chancellor erred in retroactively setting the monthly child support owed for Kendall to a higher amount. The higher amount placed Henry in arrears and contributed to a finding that he was in contempt. In support, Henry argues that in the chancellor’s bench ruling, she erred in failing to provide a written finding stating whether the application of the statutory guideline was reasonable pursuant to Mississippi Code Annotated section 43-19-101(4) (Supp.2013). According to Henry, without a written finding, the chancellor should have capped the amount of child support he owed for Rachel. While the chancellor did fail to specifically address the guideline in her bench ruling beyond stating that the statutory cap did not apply, we find the chancellor’s thorough reasoning in the final judgment to be sufficient. Because, “[w]hen a chancellor makes a ruling [on child support] without specific findings of fact[,] and a party raises the issue of the amount of child support awarded, [an appellate c]ourt will send the issue back to the lower court for the mandatory specific findings of fact[.]” Morris v. Morris, 5 So.3d 476, 495 (¶ 47) (Miss.Ct. App.2008) (quoting McGehee v. Upchurch, 733 So.2d 364, 371 (¶37) (Miss.Ct.App. 1999)). As explained, the chancellor ultimately provided a thoroughly -written finding explaining that the guideline of 14% of Henry’s AGI was appropriate child support even though his income exceeded $50,000. Thus, there would be nothing on this issue for the chancellor to address that she did not address in her final judgment.
¶ 13. Under the same issue, Henry argues that he should have paid $583.33 instead of the $861 he paid; therefore, he is entitled to a credit for the difference. Henry claims that the chancellor erred in finding that he actually owed over $1,000 per month in child support instead of the $583.33 he claims he should have paid or the $861 he actually paid. The record indicates that the chancellor determined Henry’s AGI for 2011 and 2012 based upon evidence presented at trial through Henry’s tax documents and other employment documents. She found that his 2011 monthly AGI was $7,551.42 and 2012 was $7,345.84; thus, 14% for 2011 was $1,057.19 monthly and 2012 was $1,028.40 monthly.[2] As a result, she denied Henry’s request for a credit, and ordered him to pay the difference between the actual amount owed and the $861 he paid. The chancellor did not abuse her discretion, commit manifest error, or apply an incorrect legal standard in her decisions and findings, particularly because she based the amount owed on Henry’s financial documents presented at trial. Her findings *184 were supported by evidence in the record; therefore, these issues are without merit.
II. EQUITABLE DIVISION
¶ 14. In Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), the supreme court provided the following guidelines for chancellors to consider when equitably dividing a marital estate:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
After considering the guidelines, the chancellor awarded Tracey assets worth $80,952.48; Henry was awarded $50,938.48 in assets. This total amount did not include Henry’s military retirement benefits, which the chancellor valued at $1,770 per month; the chancellor did not give a lump-sum value. Tracey was awarded 64.75% of his total monthly retirement benefits as part of her estate; Henry received the remaining 35.25%. Henry makes three arguments concerning the equitable distribution of the marital estate.
¶ 15. First, Henry claims that the chancellor improperly valued the marital home at its 2012 value as opposed to its value in 2009 when the temporary order was entered. He claims that due to the incorrect valuation, Tracey received a lower value of assets making it more likely that alimony would be necessary. Two appraisals were done on the home: the 2009 appraisal valued the home at $132,000; the 2012 appraisal valued the home at $105,000. The chancellor used the latter value when assessing the home’s value to Tracey. Henry admits that the chancellor had the discretion to set the dates for valuation of assets, and he cites to no other authority for his proposition that the chancellor is required to use the same date for valuation of all property. In using the 2012 value, the chancellor specifically noted that the house had significantly depreciated, that Tracey had been re *185 sponsible for the mortgage payments since the separation, and that Henry had abandoned the house. The supreme court has stated that “the chancellor enjoys broad discretion to value property as of any date that, in the chancellor’s view, equity and justice may require.” In re Dissolution of Marriage of Wood, 35 So.3d 507, 516 (¶ 20) (Miss.2010). We can find no case law that a chancellor must use the same date when valuing all the property. Therefore, this issue is without merit.
¶ 16. A more complex issue involves the chancellor’s award of 64.75% of Henry’s military retirement benefits. Henry argues that 10 United States Code section 1408(e) (2009) limited the chancellor from awarding anything over 50% of his military retirement. The statute reads: “The total amount of the disposable retired pay of a member payable under all court orders pursuant to subsection (c) may not exceed 50 percent of such disposable retired pay.” Id. This issue is a matter of first impression in Mississippi; therefore, it is prudent to consult the interpretations of this issue from other jurisdictions. In a slip opinion in Gonzalez v. Gonzalez, No. M2008-07143-COA-R3-CV, 2011 WL 221888, at *5 (Tenn.Ct.App.2011), the Tennessee Court of Appeals stated:
It appears that the United States military does not view § 1408(e)(1) as a limit. The Defense Finance and Accounting Service observes that “the amount of a former spouse’s award is entirely a matter of state law.” DIVIDING MILITARY RETIRED PAY 6 (2006), http:// www.dfas.mil/militarypay/ garnishment/Speeeh5.pdf; see also UNIFORMED SERVICES FORMER SPOUSE’S PROTECTION ACT 2-3 (2010), http:// www.redstone.army.mil/ legal/data/1-usfspa.pdf (“If a state court awarded you 60% of your former spouse’s retired pay and you qualify under this statute to get direct pay, then you would collect 50% through the Finance Center and your former spouse would be responsible for providing the other 10% to you.”) DOMESTIC RELATIONS FROM A MILITARY PERSPECTIVE; FREQUENTLY ASKED QUESTIONS 9 https:www.cnic.navy. mil/na v ycni/groups/publie/docu-ments/document/cniep_al34503.pdf (“The 50% maximum of DRP [disposable retired pay] is a limit on how much retired pay can be paid directly, but it is not a limit on how much a court can award.”).
Although not an exhaustive list, courts in Minnesota, Delaware, Texas, Alabama, Kansas, Washington, Maryland, and Iowa also take this view of the statute.[3] However, several states do consider there to be a 50% limit.[4] The majority view is that the statute is not an absolute cap, but rather a cap on what the government can pay directly to a spouse or former spouse. We find the majority view to be persuasive; therefore, the chancellor did not err in awarding Tracey more than 50% of Henry’s military retirement benefits. This issue is also without merit.
*186 ¶ 17. Henry next argues that the chancellor erred in not determining a specific monetary value of his military retirement and assigning a percentage of that value to Tracey’s estate. Had the chancellor added in this value, Henry claims Tracey’s estate would have been much greater and alimony could have been avoided. Without that value, according to Henry, there is ambiguity in the equitable distribution of the marital estate. Military retirement benefits are considered personal property, and as such, are subject to equitable division in a divorce proceeding. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). The chancellor placed a monthly value of $1,770.53 per month, but did not determine a lump-sum value. Henry cites to no authority that a chancellor is required to determine a lump-sum value of military retirement benefits. Though not at issue in other cases, there is case law describing a chancellor solely determining the monthly value of the retirement benefits and not a lump sum. However, there is also case law that shows a chancellor actually put a lump monetary value on the retirement benefits. Neither line of cases instructs that one valuation is required or more appropriate than the other. We cannot find that the chancellor erred in not determining a lump-sum amount of the military retirement benefits awarded to Tracey. We also note that the chancellor did take into account the monthly amount Tracey would receive when she determined whether Tracey was entitled to alimony and if so, in what amount.
¶ 18. We do not find that the chancellor erred in her valuation of the marital estate and the subsequent distribution of the estate. Keeping in mind the standard of review and that an equitable division does not necessarily mean an equal division, this issue is without merit.
III. ALIMONY
¶ 19. In determining whether Tracey’s estate met her needs adequately and whether alimony was appropriate, the chancellor applied all the Armstrong factors. In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the supreme court outlined twelve factors for chancellors to consider when analyzing alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Henry’s monthly AGI was $7,345.84; Tracey’s was $906.13. Tracey’s monthly expenses amounted to $2,798, and Henry’s were $2,392.85. After taking into consideration the monthly income she will receive from the equitable distribution of Henry’s military retirement, Tracey will have $2,043.76 monthly. Henry will still *187 have $6,208.21 monthly. The chancellor found that Henry had a much greater earning capacity due to his employment experience and college education received during the marriage. Tracey, at fifty-two years old, has a high school education and very limited earning capacity. After considering the remaining factors, the chancellor concluded Tracey was entitled to permanent alimony of $1,226.
¶20. “[P]eriodic alimony should only be considered if the chancellor determines that a spouse has suffered a disparity of income and standard of living following the equitable division of the marital assets.” George v. George, 22 So.3d 424, 428 (¶ 6) (Miss.Ct.App.2009) (citations omitted). As the chancellor found, even after receiving her portion of the marital estate, Tracey’s monthly income would barely cover her living expenses, and she would have to pay an increase in taxes due to the award of her portion of Henry’s military retirement and due to the change in her tax status to single "with no dependents. Although Tracey received a larger portion of the marital estate, she also received a portion of the marital debt, thereby lowering the actual value of her estate.
¶ 21. Based on a review of the record, the chancellor properly considered the values of each party’s estate and applied the Armstrong factors. Therefore, no abuse of discretion, manifest error, or inappropriate application of a legal standard was committed by the chancellor. This issue is also without merit.
IY. ADULTERY
¶ 22. Henry next argues that the chancellor erred in finding his adulterous relationship with Kelly Carr to be the ultimate demise of the marital relationship. He submits that the chancellor improperly used this factor to award Tracey a greater portion of the marital estate and alimony.
As was explained above, there is no evidence that Tracey was awarded a greater portion of the marital estate or that she was not entitled to alimony; therefore, this issue is moot. However, while the chancellor noted that Henry’s relationship with Kelly was the ultimate demise of the Stouts’ marriage, she also thoroughly explained several other factors that contributed to the break down of the marriage.
¶ 23. The chancellor noted, when addressing the Ferguson factors, that Henry refused to admit any problem with alcohol and did not attempt marriage counseling or family therapy. Therefore, while the adulterous relationship was a factor in the chancellor’s decision, there is nothing in the record to indicate that Henry was punished as a result. The chancellor also considered both parties’ faults in applying the Armstrong factors, but that Henry’s share of fault was greater due to his adultery and his choice to sever ties with Tracey and the children. However, the remaining Armstrong factors also supported an award of alimony to Tracey. In Davis v. Davis, 832 So.2d 492, 499 (¶ 23) (Miss. 2002), the supreme court upheld a chancellor’s award of alimony when the chancellor considered Dr. Gary Davis’s adultery as a factor. In upholding the finding, it found “there [was] no indication in the record or the rulings that the chancellor weighed too heavily on the adultery factor in making his determination to award Sharon [Davis] alimony.” Id.
¶ 24. There is nothing in the record before us to indicate that the chancellor relied too heavily on this factor. Much of the discussion involving fault was limited to both parties’ alcohol consumption and Henry’s lack of involvement and interest in his children’s lives since the separation, and not on the adulterous relationship. This issue is without merit.
*188 Y. ATTORNEY’S FEES
¶25. Lastly, Henry claims that the chancellor improperly awarded Tracey $8,000 in attorney’s fees because no proof was presented that Tracey could not pay her attorney. Henry submits that the itemized bill Tracey submitted was not sufficient under McKee and that Tracey’s ability to work full-time but failure to do so should have been considered.[5] In her final judgment, the chancellor stated that much of Tracey’s attorney’s fees were incurred due to Henry’s willful contempt for failure to pay child support and other amounts, and Henry actively contested these amounts throughout the proceedings. Therefore, the chancellor found that “Tracey ... is entitled to attorney’s fees incurred for the successful prosecution of her contempt action without a showing of her inability to pay.”
¶ 26. The award of attorney’s fees is left to the discretion of the chancellor. Evans v. Evans, 75 So.3d 1083, 1089 (¶ 22) (Miss.Ct.App.2011) (citing McKee, 418 So.2d at 767). Therefore, “[w]e are reluctant to disturb a chancellor’s discretionary determination whether to award attorney’s fees or the amount of any award.” Id. (citing Smith v. Smith, 614 So.2d 394, 398 (Miss.1993)). “One of the purposes for awarding attorney fees [in a contempt action] is to compensate the prevailing party for losses sustained by reason of the defendant’s noncompliance.” Durr v. Durr, 912 So.2d 1033, 1040 (¶25) (Miss. Ct.App.2005). Thus, “[n]o showing as to the McKee factors is required” where there is a finding of contempt. Patterson v. Patterson, 20 So.3d 65, 73 (¶ 26) (Miss. Ct.App.2009).
¶ 27. In the present case, the chancellor found Henry in contempt based on his failure to abide by the terms of the temporary order and bench ruling. As a result, Tracey was entitled to attorney’s fees without an analysis under McKee. As such, this issue is without merit.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Henry filed an answer and amended counter-complaint for divorce on January 4, 2011, and then a second amended answer and amended counter-complaint on January 7, 2011.

. This Court notes that the monthly amounts owed were actually $1,057.20 for 2011 and $1,028.42 for 2012; however, the chancellor's slight miscalculation does not impact the outcome of the case.

. In re Madsen, 2002 WL 34552506, at ⅜7 (Bankr.S.D.Iowa 2002); In re MacMeeken, 117 B.R. 642, 645 (D.Kan.1990); Ex Parte Smallwood, 811 So.2d 537, 539-40 (Ala. 2001); Geesaman v. Geesaman, 1993 WL 777094, at *4 (Del.Fam.Ct.1993); Marquis v. Marquis, 175 Md.App. 734, 931 A.2d 1164, 1171 (2007); Deliduka v. Deliduka, 347 N.W.2d 52 (Minn.Ct.App.1984); Grier v. Grier, 731 S.W.2d 931, 933 (Tex. 1987); In re Marriage of Bocanegra, 58 Wash.App. 271, 792 P.2d 1263, 1267-68 (1990); Forney v. Minard, 849 P.2d 724, 729 (Wyo.1993).

. See Beesley v. Beesley, 114 Idaho 536, 758 P.2d 695, 698-699 (1988); In re Marriage of Bowman, 972 S.W.2d 635, 639 (Mo.Ct.App. 1998).

. McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982).